IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| A&P SUPPORT, INC. and ADVANTAGE CAPITAL INVESTMENTS, LLC d/b/a RWI BUSINESS SERVICES <br><br> Plaintiffs, <br><br> v. <br><br> CRUCIBLE VENTURES LIMITED, THOMAS A. WHITESIDES, JR., and RANDALL CARROLL, <br><br> Defendants. | Civil Action No. 1:15-CV-094-BL |

## REPORT AND RECOMMENDATION

Defendant Thomas Whitesides, appearing *pro se*, has filed letters with the court asserting he had not been properly receiving notice of pleadings, and that he believed there was no basis for any liability against him in this action. The undersigned construed those letters as motions to dismiss for lack of notice and failure to state a claim upon which relief may be granted. Plaintiffs have filed their response to those motions, and the undersigned United States Magistrate Judge offers this report and recommendation as the parties have not unanimously consented as provided by 28 U.S.C. § 636(c).

## BACKGROUND

In December of 2014, Thomas Whitesides, and his brother Richard Whitesides, executed a Lease Agreement with Randy Carroll for Crucible Ventures to operate on the Whitesides' property to "reclaim oilfield related hydrocarbons." (Doc. 11, 3-6). Plaintiffs offer an agreement between A&P and Crucible to construct a "waste water recycling facility" on the Whitesides property and assert it was also executed in December of 2014, although the copy provided to the court is undated and signed only by representatives for A&P. (Doc. 26, 13-14).

A&P then sued Crucible and Thomas Whitesides in May of 2015, alleging a breach of the contract and joint and several liability of $785,285.59, among other claims. (Doc. 1). On June 2, 2015, A&P amended its complaint, and requested service again on Crucible, but apparently failed to serve Whitesides this first amended complaint. (Docs. 8; 9; 10). On June 3, Whitesides submitted a notarized document which was entered on the docket sheet as an answer, but which began by requesting to be removed from the lawsuit. (Doc. 11, 1). Attached to this "answer" was the lease between the Whitesides and Crucible which included among its provisions that "the Lessee agrees to hold harmless the Leasers [for] any business related liabilities associated with operations conducted on the leased real property." (Doc. 11, 6). Crucible was served notice of the amended complaint through the Texas Secretary of State on June 15, 2015, but there is no record Whitesides was served this first amended complaint. (Doc. 14). A&P amended its complaint for a second time on July 21, 2015—without first seeking leave of the opposing parties or the court, as required by Federal Rule of Civil Procedure 15(a)(2)—and attempted service on Carroll as Crucible's agent, but again did not serve Whitesides. (Docs. 15; 16; 17). A&P's counsel also, confusingly, filed an affidavit attesting to difficulty in serving Carroll personally, as opposed to as the representative for Crucible by way of the Secretary of State, but Carroll was himself not yet a named defendant in the action. (Doc. 18). Nonetheless, Carroll was served the second amended complaint personally on August 31, 2015. (Doc. 21).

A&P then changed counsel, and their new attorneys sought leave of the court and amended their complaint yet again on December 31, 2015, adding RWI as a plaintiff with "an interest in the lien and claims at issue in this lawsuit" and Carroll as an individual defendant. (Docs. 22; 23; 24; 25; 26, 1-2). This third amended complaint was again served on Carroll personally, as well as the Secretary of State, but the record does not reflect service was attempted on Whitesides. (Docs. 27; 28; 29; 30). Default was entered against Crucible and Carroll on February 12, 2016. (Doc. 32).

The next action in this case came a year later, when the undersigned required the Plaintiffs to serve the third amended complaint on Whitesides by March 10, 2017. (Doc. 34). Plaintiff's counsel responded by asserting it had previously served Whitesides by mail and had done so again after the court order. (Doc. 35).

After no further action occurred, the undersigned ordered plaintiffs to move for default against Whitesides on August 15, 2017, as he had been served the third amended complaint and failed to respond within 90 days. (Doc. 36). However, Whitesides submitted two handwritten documents to the court within the next week, attesting that he had not received any notice of action in the case since April of 2016 and again emphasizing that he had no direct contractual relationship with A&P and that he had received no money. (Docs. 37; 38). It became clear to the court that Plaintiffs had been mailing documents to Whitesides at an address where he was once served personally, but did not receive mail. (Doc. 40). At that same time, Plaintiffs' counsel requested to withdraw from the case, as A&P was in bankruptcy proceedings and not providing adequate direction in the resolution of this case. (Doc. 39). The undersigned permitted that firm to withdraw and vacated the deadline to request default, instead notifying Plaintiffs it was construing Whitesides' filings as motions to dismiss for insufficient process and failure to state a claim, and setting the standard 21 day time frame to respond to such motions. (Doc. 40).

The bankruptcy trustee then notified the court that he was in the process of obtaining new counsel to represent the Plaintiffs, and requested a ten day extension of the deadline to reply, which this court granted, extending the deadline to respond to September 29, 2017. (Docs. 42; 43). New counsel for Plaintiffs entered an appearance on October 17, 2017 and notified the court they were sending Whitesides the third amended complaint at his correct mailing address. (Docs. 45; 46). The plaintiffs were advised that the court considered this service to be a deficient response to the previous order, and the undersigned again set a deadline to respond to Whitesides' claims. (Doc.

47). Plaintiffs then filed a response which will be the main focus of this report and recommendation. (Doc. 48). Whitesides has filed another letter, entered on the docket sheet again as a "motion to dismiss," which is substantially similar to earlier reports he provided to the court. (Doc. 49).

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 12 provides for defenses to claims for relief in pleadings, including defenses of insufficient service of process and failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(5)-(6). Rule 12(b)(5) permits a challenge where a defendant has not been served a copy of the summons and complaint, and a federal court lacks personal jurisdiction over a defendant if the defendant has not been served process as provided by Rule 4. Service under the Federal Rules may be accomplished on an individual in the United States by delivering the process personally, leaving the service at the individual's home with "someone of suitable age and discretion who resides there[,]"delivering a copy to a registered agent, or by any method permitted under state law. Fed. R. Civ. P. 4(e). Texas also permits service by "mailing to the defendant by registered or certified mail, return receipt requested," and other methods with leave of court. Tex. R. Civ. P. 106(a)-(b). "The plaintiff is responsible for having the summons and complaint served...." Fed. R. Civ. P. 4(c)(1). "...[A] motion to dismiss under Rule 12(b)(5) requires the defendant to produce admissible evidence establishing the lack of proper service." *Flores v. Koster*, 2013 WL 4874115, at *2 (N.D. Tex. June 28, 2013) (internal citations omitted).

"To pass muster under Rule 12(b)(6), [a] complaint must have contained 'enough facts to state a claim to relief that is plausible on its face.'" *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 424 (5th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, quotation marks, and brackets omitted). While a court must accept as true all factual allegations in the complaint when considering a 12(b)(6) motion, legal conclusions must be supported by factual allegations. *See Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). The court "will not strain to find inferences favorable to the plaintiffs and … will not accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (internal citations and quotation marks omitted).

## DISCUSSION

### Failure to Serve

Plaintiffs contend that any failure to properly notice Whitesides of the amended complaints mailed to the wrong address must be attributed to Whitesides, as he did not register as a user of the court's Case Management/Electronic Case Filing system, which they purport is required by local rule of *pro se* defendants. (Doc. 48, 3-4). This is an unpersuasive reading of the Local Rules. Local Rule 5.1(f) states that "[u]nless excused for cause, an attorney—other than a prisoner pro se party—must register as an ECF user within 14 days of the date the attorney appears in a case, following the registration procedures set forth in the ECF Administrative Procedures Manual."

Mr. Whitesides is not an attorney, and therefore Rule 5.1(f) does not require him to register on the CM/ECF system. Plaintiffs also point to Local Rule 83.14, which requires *pro se* parties to read and comply with the Local Rules and the Federal Rules of Civil Procedure. These rules do not operate in concert to require a *pro se* defendant to register as an ECF user; to the contrary, a handbook for *pro se* parties provided by the Clerk allows that "Non-prisoner *pro se* litigants <u>may</u> participate" in the ECF system. *Pro Se Handbook for Civil Suits*, page 2, United States District

Court Northern District of Texas, Revised Aug. 16, 2017 available at http://www.txnd.uscourts.gov/sites/default/files/documents/handbook.pdf (emphasis added).

Additionally, as noted above, under the Federal Rules, it is the Plaintiffs' duty to appropriately notice defendants of new pleadings. They may not shift that burden to this *pro se* defendant, especially when they failed to appropriately prosecute the case against him for roughly sixteen months. Contrary to Plaintiffs' assertion that the failure to notice Whitesides was a harmless error, Whitesides' filings with the court indicate that he felt in the dark about the proceedings and was deeply concerned this action might result in his property being seized. (Docs. 11; 37; 38). At multiple points, Plaintiffs failed to adequately notice Whitesides of proceedings against him in this case, even after being ordered to do so. Despite the protestations that they should not be held responsible for mailing the process to the incorrect address, the Plaintiffs did not fully comply with the Texas rules that provide for service by mail, as that rule also requires a return receipt. Tex. R. Civ. P. 106(a)(2). This lack of diligence and compliance is not sufficiently ameliorated by finally executing sufficient service nearly two years after the final amendment to the complaint. Without regards to any potential failure to state a claim, a dismissal without prejudice under Rule 12(b)(5) for these persistent failures is an equitable resolution considering the specific facts of this case.

### **Failure to State a Claim**

Plaintiffs also contend that the third amended complaint is sufficiently specific as against Whitesides to prevail over a 12(b)(6) motion for failure to state a claim under the relevant standards. It is no longer correct to assert that 12(b)(6) motions are viewed with disfavor and rarely granted; the Supreme Court articulated a stringent pleading standard for federal cases in *Twombly* and *Iqbal* as set out in the legal standards section of this report. Accordingly, the Plaintiffs'

numerous citations to authority older than those cases carries little weight in contemporary evaluation of a 12(b)(6) motion.

In turn, the specific complaints against Whitesides in the third amended complaint are as follows: (1) "A&P furnished the labor and materials in accordance with the terms of the Agreement, and for the benefit of Crucible and Whitesides, or alternatively, A&P substantially performed in accordance with the terms of the Agreement[;]" (2) a *quantum meruit* claim that A&P provided materials when there was no intention on the part of Crucible and Whitesides to conduct an operation using those materials; (3) an unjust enrichment claim for a road on Whitesides' property; (4) a negligent misrepresentation claim which attributes falsehoods generally to all three defendants; (5) the existence of a "sham contract" between Whitesides and A&P as under Texas Property Code § 53.026; and (6) the foreclosure of a materialmen's lien on Whitesides' property. (Doc. 26, 4-10).

A diligent defense attorney may be successful in attacking a number of these claims through a 12(b)(6) motion—specifically, claim one which refers to an agreement between Whitesides and A&P that may not exist, and claim four which fails to specifically attribute the alleged negligent misrepresentations to specific defendants—but, on balance, the complaint satisfies the federal pleading standard, and Whitesides understandably fails to meet his burden at the 12(b)(6) stage, where he might have been more successful in a motion for summary judgment where he could introduce other evidence. However, as the complaint alleging these claims was not served on Whitesides in a timely fashion, the undersigned will recommend this motion be denied as moot.

## CONCLUSION

For the reasons above, it is **RECOMMENDED** that the motion under Federal Rule of Civil Procedure 12(b)(5) to dismiss for failure to serve be **GRANTED** and the case **DISMISSED**

**without prejudice**, and the motion to dismiss under Rule 12(b)(6) for failure to state a claim and any other motions filed by Whitesides be **DENIED as moot**. If this recommendation is accepted, the undersigned would then **RECOMMEND** default judgment be entered against Crucible and Carroll, and the case closed.

**IT IS ORDERED** that this case is transferred to the docket of Senior United States District Judge Sam R. Cummings. After that reassignment, the undersigned may continue to exercise all powers permitted by 28 U.S.C. § 636(b) unless otherwise directed by Judge Cummings.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated November 17, 2017.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**